# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALLEGRA NETWORK LLC,

    Plaintiff,

v.    Case No. 10-10941

ELNORIA RUTH and MICHAEL RUTH,

    Defendants.
                                              /

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION TO STRIKE JURY DEMAND

Pending before the court is Plaintiff's "Motion to Strike Defendants' Jury Demand," filed on June 30, 2010. Defendants filed a response on July 7, 2010, and Plaintiff filed a reply on July 14, 2010. The court concludes a hearing on this motion is unnecessary. *See* E.D. Mich LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

## I. BACKGROUND

Plaintiff Allegra Network LLC ("Allegra") is the franchisor of several brands of digital print and imaging businesses. (Compl. ¶ 8.) The sole member of Allegra is Allegra Holdings LLC ("Allegra Holdings"). (*Id.* ¶ 3.)

On January 31, 2002, Allegra Holdings acquired from Insty-Prints, Inc. ("Insty-Prints") all of Insty-Prints' assets, including a franchise agreement between Insty-Prints and Defendants, which had been entered into on October 23, 1984. (*Id.* ¶¶ 9, 13.) The franchise agreement between Insty-Prints and Defendants was valid through October 22, 2005, pursuant to a written addendum executed in 1995. (*Id.* ¶ 12.) Under the franchise agreement, Defendants agreed to pay Insty-Prints a specified royalty based

on total monthly receipts and an advertising fund contribution.  (*Id.* ¶ 10.)  The franchise agreement also contains a non-compete clause which prohibits Defendants from operating any competitive business within a twenty-five mile radius of the franchised location or any other center for a one-year period following termination of the franchise agreement.  (*Id.* ¶ 11.)  After acquiring Insty-Prints' assets in 2002, Allegra served as franchisor of the Insty-Prints system, including under Defendants' franchise agreement, and Defendants thereafter dealt with Allegra as their franchisor.  (*Id.* ¶ 13.)

On February 16, 2006, the parties entered into a second written addendum to the franchise agreement, which, among other things, extended the terms of Defendants' franchise agreement to October 23, 2015.  (*Id.* ¶ 15.)  Plaintiff contends that prior to the execution of the addendum, Defendants had defaulted on payments, and that Defendants continued to do so for nine months thereafter.  (*Id.* ¶¶ 14, 16.)  On September 17, 2008, Plaintiff demanded that Defendants cure the default by October 17, 2008.  (*Id.* ¶ 17.)  Plaintiff contends that Defendants continued to default on their monthly payments.  (*Id.* ¶ 18.)  On November 6, 2008, Plaintiff terminated the franchise agreement and demanded payment of all outstanding debt.  (*Id.* ¶ 19.)  Defendants refused to pay the amounts allegedly owed and, despite the provisions of the non-compete agreement, continued to operate a printing center in the same location.  (*Id.* ¶¶ 20, 21.)

Plaintiff alleges that Defendants owe over $300,000 and seeks monetary damages for breach of the franchise agreement.  (*Id.* ¶¶ 18, 25.)  Plaintiff also seeks an order enjoining Defendants from operating a competing business within 25 miles of the former franchise location.  (*Id.* at 6.)

Defendants contend that, prior to entering into the franchise agreement, they received oral and written assurances from Insty-Prints that the non-compete clause would not be enforced against them if the franchise should fail through no fault of their own. (Def.'s Answer ¶ 33.) In their answer, Defendants asserted a counterclaim against Plaintiff, alleging that Plaintiff made material misrepresentations regarding enforcement of the non-compete clause, causing them to enter into an agreement when they otherwise would not have. (*Id.* ¶ 37.) Defendants seek a declaration that the non-compete covenant is null, as well as rescission of any contracts between the parties. (*Id.* at 5.) Defendants also seek monetary relief for mental anguish allegedly caused by Plaintiff's fraudulent misrepresentations. (*Id.*)

Defendants filed their demand for a jury trial on May 24, 2010, twenty-one days after filing their original answer and counterclaim. On the same day, Plaintiff filed its reply to Defendants' counterclaim. Plaintiff thereafter filed its motion to strike Defendants' jury demand on the grounds that it was untimely as to Plaintiff's complaint. (Pl.'s Mot. at 5.) Plaintiff also contends that no right to a jury trial exists as to the issues raised in Defendants' counterclaim. (*Id.* at 7.)

## II. STANDARD

Federal Rule of Civil Procedure 38(b) provides that "[o]n any issue triable of right to a jury, a party may demand a jury trial by . . . serving the other parties with a written demand-which may be included in a pleading-no later than 14 days after the *last pleading directed to the issue* is served." Fed. R. Civ. P. 38(b) (emphasis added). The "last pleading directed to the issue" is not the pleading that raises the issue; it is the pleading that contests the issue. Normally, that pleading is an answer, or, with respect

3

to a counterclaim, a reply.  9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2320 (3d ed. 2004).

A jury demand must not only be timely; it must be properly asserted with respect to an "issue triable of right to a jury." Fed. R. Civ. P. 38(b).  "In federal court, the right to a trial by jury is a matter of federal law, even in cases where jurisdiction rests upon diversity of citizenship." *Timken Alcor Aerospace Tech., Inc. v. Alcor Engine Co.*, No. 1:06-CV-2539, 2010 WL 2650026, at *1 (N.D. Ohio July 2, 2010) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)).  Under the Seventh Amendment, the right to a jury trial exists only in "'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996) (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)) (alteration in original); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).  "If the case involves only equitable rights, then a jury trial is not allowed." *Provident Life & Acc. Ins. Co. v. Adie*, 982 F. Supp. 1269, 1270 (E.D. Mich. 1997).  "Thus, to determine whether the Seventh Amendment entitles a particular litigant to a jury trial in a particular case, [the court] must determine whether that case will resolve legal rights, or only equitable rights." *Kelsey-Hayes Co.*, 73 F.3d at 659 (citing *Curtis*, 415 U.S. at 193).

In making this determination, the court engages in two different inquiries.  First, "a court must compare the case at issue to '18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.'" *Provident Life*, 982 F. Supp. at 1271 (quoting *Kelsey-Hayes*, 73 F.3d at 659).  "If the case at issue was unknown in 18th century England, [the court] must look to an analogous claim that

4

existed then to guide [it] in deciding whether the present case is legal or equitable." *Id.* (quoting *Kelsey-Hayes*, 73 F.3d at 659). Second, and most importantly, the court examines "the remedy sought and determine[s] whether it is legal or equitable in nature." *Kelsey-Hayes*, 73 F.3d at 659 (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990)).

### III. DISCUSSION

In its motion to strike Defendants' jury demand, Plaintiff argues that Defendants' demand is not timely with respect to Plaintiff's complaint. Plaintiff contends that all remaining issues, for which Defendants' jury demand is timely, are not properly triable before a jury because they are equitable in nature.

### A. Timeliness

Plaintiff argues that Defendants' demand for a jury trial, filed on May 24, 2010, is not timely with respect to Plaintiff's complaint because it was not served within fourteen days after the "last pleading" directed to the issues was served. (Pl.'s Mot. at 6.) Plaintiff argues that "[t]he 'last pleading' directed to the issues raised by [Plaintiff's] complaint was defendant's answer, filed on May 3, 2010." (*Id.*) Plaintiff maintains that Plaintiff's May 24, 2010 reply to Defendants' counterclaim is not the last pleading directed to the issues raised by the complaint because Defendants' counterclaim raises issues that are different than those raised in the complaint. (*Id.*) Plaintiff contends that the ultimate issue in Plaintiff's complaint is whether Defendants breached their contract, while Defendants' counterclaim concerns misrepresentations made prior to entering into the contract. (Pl.'s Reply at 3.) Therefore, Plaintiff argues, Defendants' counterclaim

5

does not affect the timeliness of the jury demand with respect to the issues raised in Plaintiff's complaint. (Pl.'s Mot. at 6.)

In response, Defendants argue that the issues raised in their counterclaim are "interwoven with and essentially similar to those raised in [Plaintiff's] complaint," and therefore Plaintiff's reply to their counterclaim is the last pleading directed to the issues raised by Plaintiff's complaint. (Defs.' Resp. at 6.) Defendants argue that they were induced into the franchise agreement by Plaintiff's fraudulent misrepresentations. (*Id.*) Defendants contend that favorable resolution of their fraud counterclaim will necessitate a finding that they are not liable for breach of contract, and therefore the issues in their counterclaim are "interwoven with" those in the complaint. (*Id.*) According to Defendants, the jury demand, timely as to the counterclaim and reply, extends to all the issues in the case. (*Id.*)

The general rule is that "[i]f the counterclaim raises the same issues as are raised by the answer, a demand not later than [fourteen] days after the reply is effective for those issues." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2320 (3d ed. 2004) [hereinafter Wright & Miller]; *see also Transocean Air Lines v. Pan Am. World Airways, Inc.*, 36 F.R.D. 43, 45 (S.D.N.Y. 1964) ("Where the issues raised by the counterclaim and reply are essentially similar to those in the complaint, a jury demand, timely as to the former but not the latter, will extend to all the issues in the case."). "However, if the counterclaim and reply raise new issues that were not contained in the complaint and answer, a demand served more than [fourteen] days after the answer, but within [fourteen] days after the reply, is effective only for the

6

issues raised in the counterclaim and reply and not those in the complaint and answer." Wright & Miller § 2320.

The term "new issues" has been interpreted to mean new issues of fact, not new theories of recovery. *AMC Demolition Specialists, Inc. v. Bechtel Jacobs Co.*, No. 3:04-CV-466, 2005 WL 3240576, at *2 (E.D. Tenn. Nov. 30, 2005); *see also Pro2Serve Prof'l Project Servs., Inc. v. BWXT Y-12, LLC*, No. 3:07-336, 2009 WL 1636256, at *5 (E.D. Tenn. June 11, 2009). "[A] determination of whether a common issue exists rests on whether the claims 'turn on the same matrix of facts, and concern the same general area of dispute.'" *SEC v. Battenberg*, No. 06-14891, 2009 WL 3497803, at *1 (E.D. Mich. Oct. 29, 2009) (quoting *Cal. Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1109 (9th Cir. 2005) (holding that because most facts relevant to the dispute were central to both claims, counterclaim raised same issues as complaint even though it required proof of some facts unnecessary to complaint)).

In this case, Defendants' obligation to abide by the franchise agreement and Plaintiff's entitlement to relief due to breach of contract are two sides of the same coin. *See Whirlpool Fin. Corp. v. Sevaux*, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994) (holding that the issues raised in defendant's counterclaims of fraud in the inducement were "inextricably intertwined" with plaintiff's allegations that defendant wrongfully failed to repay a promissory note). Defendants' counterclaim for fraud is not a new issue for the purposes of Rule 38, but simply a different version of the denial in their answer to Plaintiff's complaint. The issue of fraudulent misrepresentation may be decisive of both Plaintiff's claim and Defendants' counterclaim. If Plaintiff made misrepresentations regarding enforcement of the non-compete clause, and those misrepresentations were

7

material, Plaintiff's claims for breach of contract may fail.  Thus, the "last pleading directed to" the issue of Defendants' obligation to abide by the franchise agreement was Plaintiff's reply to Defendants' counterclaim, and Defendants' jury demand with respect to the issues raised in Plaintiff's complaint was timely.

## B.  Right to Jury Trial

In its motion to strike Defendants' jury demand, Plaintiff also argues that the issues raised in Defendants' counterclaim are not properly triable before a jury because Defendants' claim for rescission is an equitable cause of action.  Plaintiff contends that the monetary relief sought by Defendants for mental anguish is equitable, rather than legal, in nature because it is "intertwined with defendants' equitable claim for rescission."  (Pl.'s Mot. at 8.)

In response, Defendants argue that although they admittedly seek some forms of equitable relief, they also seek monetary compensation of a legal nature.  Defendants contend that because they seek "actual damages to compensate them for injuries proximately caused by Plaintiff's fraudulent misrepresentations . . . above and beyond the value of rescission," they are entitled to trial by jury.  (Def.'s Resp. at 8.)

Because Defendants have not specified any issues on which they demand a jury trial, Federal Rule of Civil Procedure 38(c) mandates that Defendants shall be deemed "to have demanded a jury trial on all the issues so triable."  Fed. R. Civ. P. 38(c).  Therefore, this court must determine whether the causes of action in the present case are ones that are triable by jury or ones that are not triable by a jury as a matter of right.

In determining whether the claims presented are of a legal or equitable nature, the Sixth Circuit has made it clear that the second prong—the nature of the remedy—is more important. *Evanoff v. Banner Mattress Co.*, 550 F. Supp. 2d 697, 700 (N.D. Ohio 2008); *see also Meritan, Inc. v. Regions Bank*, No. 08-2757-STA-dkv, 2009 WL 2163502, at *6 (W.D. Tenn. July 16, 2009). While a monetary award is generally a form of legal relief, "[i]t is not true, however, that 'any award of monetary relief must *necessarily* be legal relief.'" *Kelsey-Hayes Co.*, 73 F.3d at 661 (quoting *Terry*, 494 U.S. at 570). Equitable relief can also include monetary damages where required to afford complete relief. Restatement (Second) of Contracts § 358(3) (1981). "[A] monetary award 'incidental to or intertwined with injunctive relief' may be equitable." *Kelsey-Hayes Co.*, 73 F.3d at 661; *see also F.T.C. v. Mazzoni & Son, Inc.*, No. 06-15766, 2007 WL 2413086, at *3 (E.D. Mich. Aug. 14, 2007) (noting that monetary payments for restitution and disgorgement are equitable remedies). "Where both legal and equitable relief are demanded, or are essential to a complete determination of the controversy, the action is ordinarily classified according to what appears to be its primary purpose." *Douglas v. Burroughs*, 598 F. Supp. 515, 517 (N.D. Ohio 1984).

In the instant case, Defendants' claim for declaratory relief due to fraud involves the determination of equitable rights. *See Chicago Ins. Co. v. Capwill*, No. 3:01-2588, 2010 WL 2723716, at *4 (N.D. Ohio July 8, 2010) ("[F]raud is neither a legal nor equitable issue in the abstract. Instead, the relief sought by the party raising the issue is controlling for purposes of determining a right to a jury trial."). First, Defendants' request for a declaration that no contract exists is comparable to a claim for rescission of a contract, which 18th Century England would have characterized as equitable. *See*

9

*Provident Life*, 982 F. Supp. at 1271 (defining "rescission of contract" as "an action of an equitable nature in which a party seeks to be relieved of his obligations under a contract on the grounds of . . . fraud" (citations omitted)); *see also Black v. Boyd*, 248 F.2d 156, 162 (6th Cir. 1957).

Second, Defendants' prayer for monetary damages due to mental anguish are incidental to their prayer for rescission. Although it is true that monetary damages for mental anguish are legal in nature, the court finds that the essence of Defendants' claim, fairly stated, is a request for rescission of the franchise agreement such that they are no longer contractually bound to Plaintiff. *See Chrysler Workers Ass'n v. Chrysler Corp.*, 663 F. Supp. 1134, 1142 (N.D. Ohio 1986) (finding that plaintiffs' claim for money damages for severe mental and emotional distress was merely incident to the injunctive relief plaintiffs sought). The "primary purpose" of Defendants' counterclaim, relieving them of their contractual obligations, appears to be equitable in nature.

Similarly, Plaintiff's claim for enforcement of the covenant not to compete is equitable. However, Plaintiff's claim for monetary damages incurred by Defendants' alleged breach of the franchise agreement is legal in nature and implicates the right to a jury trial. *See Jones v. Metro. Hosp. & Health Ctrs.*, 88 F.R.D. 341 (E.D. Mich. 1980) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.") (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962)).

"When legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Transmatic, Inc. v. Gulton Indus., Inc.*, 835 F. Supp. 1026, 1029 (E.D. Mich. 1993)

(quoting *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 549 (1990)). "'[O]nly under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" *Provident Life*, 982 F. Supp. at 1271 (quoting *Dairy Queen*, 369 U.S. at 472-73). "Once the right to a jury trial attaches to a claim . . . it extends to all factual issues necessary to resolving that claim." *Bacon v. Honda of America Mfg., Inc.*, 205 F.R.D. 466, 488 (S.D. Ohio, 2001) (citation omitted); *Mason v. Granholm*, No. 05-73943, 2007 WL 2541769, at *4 (E.D. Mich. Aug. 31, 2007). "When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before the final court determination of the equitable claims." *Bacon*, 205 F.R.D. at 488.

Defendants have timely asserted a jury demand as to Plaintiff's legal claim for breach of contract and therefore have a right to a jury trial as to that claim. In determining the remaining equitable claims, this court must be extremely careful so as not to trammel upon the parties' rights to litigate Plaintiff's claim for money damages by way of a jury. *Provident Life*, 982 F. Supp. at 1271. "Maintenance of the jury, as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Zamorano v. Guthikonda*, No. 07-12943, 2009 WL 806844, at *1 (E.D. Mich. Mar. 27, 2009) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959)).

The issue of fraudulent misrepresentation may be dispositive of both Plaintiff's breach of contract claim and the equitable claims. As explained above, if Plaintiff made

11

misrepresentations regarding enforcement of the non-compete clause, and those misrepresentations were material, Plaintiff's claims for breach of contract will fail. Likewise, the same factual issues are essential to Defendants' claim for declaratory relief and rescission. Because both claims involve the same factual issues, were this court to determine the issue of fraudulent misrepresentation before a trial by jury on the breach of contract claims, Defendants may be denied their constitutional right to a jury trial. Thus, the issue of fraudulent misrepresentation should be decided by a jury prior to any final court determination of the equitable claims. *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 85 (M.D. Tenn. 2004) (citing *Dairy Queen*, 369 U.S. at 479). Whatever permanent injunctive relief to which either party may be entitled on the basis of the decision in this case can be afforded by the court after the jury renders its verdict. *See Beacon Theatres*, 359 U.S. at 508.

Accordingly, IT IS ORDERED that Plaintiff's motion to strike Defendants' jury demand [Dkt. # 20] is DENIED.

  S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 12, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 12, 2010, by electronic and/or ordinary mail.

  S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522